Lessee of DAVID SHERER <em>against</em> THOMAS M'FARLAND.

Improvements on lands not purchased from the Indians, or made after the treaty at Fort Stanwix, and before the opening of the land office on 3d April 1769, not allowed in evidence.

Evidence of money given to a surveyor to enter a *caveat* against a survey, and he neglecting to do it, not admitted to operate against a third person.

EJECTMENT for 318 acres of land in Unity township.

The plaintiff showed in evidence, a warrant to the lessor for 200 acres of land, including an improvement, on the waters of

Sewickly, adjoining lands of Arthur O'Hara, William Anderson, and the widow Eager, dated 24th June 1785. Also a deed poll of the improvement, from John Loydick to William Mount, in consideration of 200*l.* dated 11th January 1775, and another deed from the said Mount to Sherer thereof, in consideration of 220*l.*, dated 21st January 1778.

The plaintiff then offered witnesses to prove that one Abraham Leasure made a considerable improvement of these lands in 1768 and 1769 before the opening of the land office, and that John Loydick derived title under him.

This evidence was objected to by the defendant's counsel, who cited Plumsted's lessee v. Rudebagh in this court, where such evidence was disallowed.

The plaintiffs counsel expressed a wish to be fully heard on this point. The royal charter was granted to William Penn for the purpose of colonization. The first adventurers agreed to make their settlements within three years. People were invited by the first proprietary from all parts of Europe to come and settle within his province; and the uninterrupted practice of the land office before the revolution has ascertained to every improver his right of pre-emption. In confidence of this established system, persons from all quarters came amongst us, and were adopted freeholders of the soil. The decisions of courts and juries confirmed the general opinion; and thus by common consent the improvement doctrine became the law of the land. If the tribunals of justice erred herein, it may be truly said, that *communis error facit jus*. To abridge the benefits which people expected to deprive from making original settlements, would produce palpable injustice.

The court saved the defendants' counsel the trouble of a reply. The observation made, if correct throughout, go in favour of improvements generally. We are no enemies to *bona fide* improvements, restricted within rational limits. But these were never deemed to extend beyond the lands purchased from the Indians. Such a system would be wild, as well as highly impolitic, and would tend to deluge the country in blood, by provoking the savage nations to hostilities.

Under the law of 3d February 1768, all persons were interdicted from settling on the indian lands, under the highest forfeiture, know in society. And by a subsequent act of (1 Dall. Laws 503) 18th February 1769, persons making such setttlements, or making

surveys, or making or cutting down trees, with design to settle or appropriate such lands, incur a penalty of 500*l.* and twelve months imprisonment. It cannot be possible that such daring infringers of the laws could gain any title by unauthorized acts of trespass, against the solemn declared will of the community.

It must be admitted, that the lords of the soil had the exclusive right of disposing of their lands in their own mode. Immediately after the Indian treaty at Fort Stanwix, was closed on the 4th November 1758, the people were publicly notified, that improvements on the newly purchased lands should give them no advantage whatever, and the same information was given on the opening of the land office. It cannot therefore be doubted, but that to obtain a title to the lands lately sold by the natives, it was absolutely necessary to apply to the land office in the usual and accustomed method.

Such have been the uniform decisions of courts of justice, in which we fully acquiesce. To establish a contrary doctrine, would introduce insecurity of property and every species of mischief. The testimony offered is therefore overruled.

The defendant showed in evidence, an application of John M'Clure, jun. entered on 3d April 1769, for 300 acres of land, about three miles from captain Proctor's, in Cumberland county ; a survey thereon of 240½ acres on the 26th September 1769 ; a warrant of acceptance thereof dated 6th June 1770 ; and a patent to the said M'Clure, in consideration of 12*l.* 0*s.* 6*d.* sterling dated 12th June 1770.

The plaintiff then offered to show by a witness, that the person holding the improvement had paid one dollar to the surveyor, who made M'Clure's survey, in order to enter a *caveat* for him, which he neglected to do, notwithstanding his engagement.

*Sed per curiam.* The testimony is inadmissible, and cannot effect the defendant. He who trusts an agent shall suffer by his neglect, and not a third person who places no confidence in him. 3 Atky. 655.

Plaintiff nonsuit.

Messrs. Brackenridge and Galbraith, *pro quer.*
Messrs. Ross and M'Kitchen, *pro pef.*

This cause was tried before at Nisi Prius, November 3d, 1785, on an ejectment brought by the lessee of John M'Clure v. David Sherer. The judges then gave the same determination as to the testimony, but the jury found for the defendant, against the opinion of the court. A new trial was awarded in September term, 1786, and when the action came down to trial on 3d November, 1786, and the jury was sworn, the defendant refused to confess lease entry and ouster.